IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY I, L.P. and AT&T INTELLECTUAL PROPERTY II, L.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 14-1106-GMS |
| v. | ) ) | |
| COX COMMUNICATIONS, INC., et al., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER**

## I.    INTRODUCTION

Rather than address its contradictory statements and lack of evidence in its reply brief (or at least attempt to cure them), Cox instead attempts to shift the heavy burden for proving that transfer is proper to AT&T. Cox uses the shotgun approach, scattering arguments and hoping something—anything—hits. But Cox can't escape its prior sworn statements or testimony, and Cox tellingly doesn't address the multiple and critical contradictions in the positions it previously took when the same Cox parties desired transfer to (and opposed transfer from) Delaware.

## II.    ARGUMENT

### A.    The Cox Entities Have Not Met Their Burden to Prove That This Action Could Have Been Brought in the Northern District of Georgia

Cox alleges that "AT&T engages in classic lawyerly flip-flopping." (Reply.4) Yet when all of the Cox entities in this case felt it was most advantageous to seek venue in Delaware, they stated that venue was proper here, that all the Cox entities could **only** be joined in this jurisdiction, and that the principal place of business for each regional Cox entity was in its home state (Georgia for **only** one). Now, when Cox seeks transfer from Delaware, it takes the position

that the operative facts have somehow changed. It is Cox's burden to prove that this case could originally have been brought in the Northern District of Georgia, and although Cox spends a significant portion of its reply brief attempting to denigrate the sufficiency of AT&T's evidence, Cox does not address the dispositive insufficiency of its own evidence or the conflicting sworn statements directly on-point. By contrast, AT&T has not engaged in any such flip-flopping.[1]

In its reply, Cox points to a single conclusory sentence in an affidavit as the sole evidence supporting its allegation that all of the local Cox entities have primary places of business in Atlanta. (Reply 3).  However, Cox never addresses its own conflicting prior sworn testimony that the way CCI and its subsidiaries are structured does not provide jurisdiction up and down the chain, or the pleadings stating that each of the Cox subsidiaries reside only in Delaware and its regional district.[2] (Opp'n.3-7 & Exs.1-3). In light of Cox's prior sworn testimony and pleadings, Cox needs something more than a conclusory sentence to prove that the regional Cox defendant entities are active and subject to personal jurisdiction in the Northern District of Georgia. Cox offers no substantial, non-conclusory evidence on that point. The fact that some of the Cox products or services accused in the Sprint litigation may have been different from those accused

---

[1] Cox's argument that AT&T somehow "flip-flopped" in its arguments because it alleges infringement by each of the 32 Cox entities, including regional entities, while pointing to evidence of specific knowledge of at least some Cox employees and entities from meetings in Atlanta and New Jersey to support the willfulness contentions in its complaint, is illogical. AT&T has been entirely consistent in its complaint and arguments. Further, Cox's proposition that AT&T must plead joint infringement for the activities of the Cox parents and regional entities is absurd, as each of the Cox entities is accused of at least direct infringement of one or more patent-in-suit.

[2] Cox argues that the sworn statements in the Sprint matter should be ignored because Cox had already filed its declaratory judgment action in Delaware. (Reply 2). But Cox took the position that Delaware was the **only** possible jurisdiction as early as March 22, 2012, three weeks **before** filing the Delaware action. In correspondence to Sprint, counsel for Cox stated that "Most of the collection of [Cox regional entities] are not present in Kansas, or for that matter, **any other single jurisdiction, except for Delaware**, where they are all incorporated."  (Opp'n Ex.1 (Dkt. 35-2 at 9) (emphasis added)).

in this matter does not change the testimony offered in that matter, nor the purpose for which it was quoted in AT&T's reply.[3]

Despite introducing new arguments and forty-seven new pages of evidence with its reply brief (none of which ultimately affect the proper outcome), Cox does not overcome its failure of proof. For example, Cox highlights five accused product categories in its reply: (i) Cox's digital telephone network; (ii) Cox's DOCSIS network and products; (iii) Cox's cable television network; (iv) Cox's cable television products; and (v) third-party products. Of those five accused product categories, Cox has offered evidence (the affidavit for their opening brief) related to only **one** – DOCSIS – suggesting that this accused product has some relationship to the Northern District of Georgia (in addition to a statement that at least some software updates for set-top boxes are "deployed from Atlanta"). This does not carry their burden to show that the events giving rise to AT&T's claims concerning the digital telephone networks, the cable television networks, the cable television products, and the third-party products occurred in the Northern District of Georgia.

The undisputed testimony was that CCI provides back-office support only to the local Cox entities, and does not offer any products or services in any Cox service region. *See id.* Cox did not dispute the testimony that the regional entities have their own "independent management and employees," "pay their own taxes and own the assets needed to run their business," "separately manage the marketing and sale of their products, and [] independently purchase and maintain their own equipment," or that "[t]hat type of relationship does not confer jurisdiction up and down the entire Cox enterprise." (Opp'n. 4 & Ex.2 at 6). Cox further did not explain the

---

[3] A discovery agreement between AT&T and Cox to prevent additional paperwork and expense of serving identical written discovery on all individual Cox and AT&T entities is similarly immaterial to proving where the local Cox entities have a principal place of business, or where infringement occurs through their operations. What information AT&T has or has not yet sought from Cox at this early stage in discovery is similarly immaterial.

contradiction between Cox's conclusory declaration and its declaratory judgment complaint in this district, identifying each regional entity's state of incorporation as Delaware and its principal place of business as its regional home, which Judge Robinson cited in denying Sprint's subsequent motion to transfer venue. (Opp'n. 5 & Ex. 4 ¶ 4). The vast weight of the evidence— which Cox does not refute or turn from—is that the regional entities directly and indirectly infringe, as well as contribute to the infringement of others, and that the Atlanta-based organizations provide only legal, accounting, and national-level technical support to the regional entities.

**B.**    **The Cox Entities Fail to Prove that the *Jumara* Factors Strongly Favor Transfer.**

Cox's discussion of the *Jumara* factors is similarly lacking in support and evidence, in some cases directly contradicts Cox's previous statements, and fails to show that the balance of factors strongly favors transfer. For example, Cox argues that "[t]here is no question that a substantial portion (if not all of) the accused activities are directed from Cox's headquarters in the Northern District of Georgia." (Reply 7) But as explained above and in AT&T's Opposition, Cox has repeatedly sworn that these regional entities are independent from the Cox parents with respect to operations, purchasing, marketing, sales, customer service, and other activities. Cox offers no evidence to prove otherwise, but instead simply posits—without support—that these regional entities have a different relationship with the Atlanta parents now than they did then.

In its reply, Cox further focuses its discussion of the *Jumara* factors on "third-party devices made by Cisco, Arris, and others." (Reply 7). Cox argues that the idea that Cox Omaha is designing and manufacturing Cisco products in Omaha is "absurd." (Reply 7). Cox's argument is indeed based an absurd presumption, and AT&T never made such an argument. Of course, CCI and CoxCom are not designing Cisco products in Atlanta, either. According to the unrefuted

evidence introduced by AT&T, at least some of those products are designed in San Jose, California. (Opp'n. 16 & Ex.18). As demonstrated in AT&T's Opposition brief, the presence of the third-party products in this case does not favor transfer.

Cox also attempts to shift the burden of proof to AT&T with respect to third-party witnesses. Cox has identified five third-party inventors who are last known to reside in the Atlanta area, but it has not established that any of them would be unwilling or unable to travel to Delaware for trial, and in fact AT&T has submitted declarations from two of the inventors stating that they would not be inconvenienced by travel to Delaware. Cox's misguided attempt to shift the burden should not obscure its inability to prove that the balance of factors **strongly** favors transfer are unavailing.

C.     **Cox Misrepresents the Agreement Between the Parties on Discovery for Transfer.**

Cox introduces an email from AT&T's counsel as support for its proposition that AT&T waived its right to ask the court for venue discovery as an alternative remedy in the opposition brief. (Reply 10). As Cox was well aware, the purpose of the parties' agreement was to avoid further delay of the briefing beyond the two week extension. Notwithstanding Cox's misleading presentation of the course of dealings, counsel for AT&T expressly reserved the right to seek discovery as an alternative remedy in the opposition brief.

## III.     CONCLUSION

Despite opportunities in its motion and reply to introduce evidence supporting its position, Cox has failed to meet its burden to prove that the case could have been brought in the Northern District of Georgia and that the balance of *Jumara* factors strongly favor transfer. For the reasons stated above and in AT&T's Opposition brief, Cox's motion should be denied.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

_____

John G. Day (#2403)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Of Counsel:*

Theodore Stevenson, III
David Sochia
Jared Hoggan
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000

*Attorneys for Plaintiffs*

Dated:  March 10, 2015