IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY I, L.P. and AT&T INTELLECTUAL PROPERTY II, L.P., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 14-1106-GMS |
| COX COMMUNICATIONS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## **ORDER**

WHEREAS, on August 28, 2014, the plaintiffs (collectively, "AT&T") initiated this lawsuit against thirty-two Cox Communications entities (collectively, "Cox"). (D.I. 1.) Cox Communications, Inc. ("CCI") is the corporate parent of CoxCom, LLC ("CoxCom"), both of which are organized under the laws of Delaware and maintain their principal places of business in Atlanta, Georgia. (D.I. 116, ¶¶ 6, 7.) Either CCI or CoxCom serves as the direct or indirect parent entity for the remainder of the regional Cox defendants (the "regional entities"). (*Id.* ¶ 7.) All but one of the regional Defendants is organized under the laws of Delaware.[1] (*Id.* ¶¶ 8–37.) The parties dispute the locations of the regional entities' principal places of business;

WHEREAS, presently before the court is the Cox's Motion to Transfer Venue to the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a) (D.I. 76);

WHEREAS, the court having considered the pleadings, the parties' submissions, and the applicable law;

IT IS HEREBY ORDERED THAT:

---

[1] Cox Virginia Telcom, LLC is organized under the laws of Virginia. (D.I. 116, ¶ 36.)

1. Cox's Motion to Transfer (D.I. 76) is DENIED.[2]

---

[2] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought...." 28 U.S.C. § 1404(a). While the Third Circuit has outlined a multi-factor analysis for evaluating the interests of convenience and justice, *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), the court must not forget the threshold question: is the proposed transferee forum one in which the action could have originally been brought? *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) ("[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."); *see also* 15 Wright and Miller, Federal Practice and Procedure § 3841 (4th ed. 2014) ("[*Hoffman*] requires that the transferee court (1) would have been a proper venue and (2) would have had personal jurisdiction over the defendant had the case been filed there initially."). "The burden of establishing the need for transfer ... rests with the movant." *Jumara*, 55 F.3d at 879.
    Cox have failed to meet this burden. In support of their claim that this suit might have originally been filed in the Northern District of Georgia, they provide the sworn statement of Stephanie Allen-Wang, intellectual property counsel for the Cox entities. (D.I. 78.) Ms. Allen-Wang states conclusively that "the principal place of business of all of the Cox defendants is Cox's headquarters in Atlanta." (*Id.* ¶ 6.) If this statement is correct, then the Northern District of Georgia indeed would have been a proper forum—personal jurisdiction and venue would have been satisfied. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (alterations omitted)); *see also* 28 U.S.C. § 1391(b)(1), (c)(2) ("A civil action may be brought in ... a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located .... [A corporation] shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction.").
    But AT&T has produced for the court several inconsistent statements made by Cox in previous litigation that severely undermine the credibility of Ms. Allen-Wang's self-serving statement. In particular, in a case in this District before The Honorable Sue L. Robinson, the same thirty-two Cox entities—then as plaintiffs—stated in their declaratory judgment complaint that each of the regional entities had their principal places of business in their regional home: *e.g.*, "Cox Arkansas Telcom, L.L.C. is a Delaware corporation with a principal place of business in Arkansas"; "Cox Communications Arizona, LLC is a Delaware corporation with a principal place of business in Arizona." (C.A. 12-487-SLR, D.I. 1, ¶¶ 6–35.) Moreover, in that case, Cox opposed a motion to transfer to the District of Kansas, arguing that the regional Cox entities "are licensed in specific jurisdictions and are therefore *legally limited* as to the geographic markets they can serve." (C.A. 12-487-SLR, D.I. 50 at 4–5 (emphasis added).) Cox also argued that the regional entities "are local telecommunications, cable, and broadband companies *which operate only in the service territories where they are licensed*." (*Id.* at 2 (emphasis added).) Judge Robinson appeared to accept these statements in denying the motion to transfer. (C.A. 12-487-SLR, D.I. 76 at 2 ("Cox Communications is headquartered in Atlanta, Georgia, and each state-specific Cox subsidiary allegedly maintains a principal place of business in its respective state.").) Cox also made similar statements in the then co-pending Kansas litigation, where it was seeking transfer *to the District of Delaware*. (D.I. 91, Ex. 1 at 16 ("The fact that Delaware is the only location that can exercise jurisdiction over all of the potential Cox defendants—and thus is the only place that can provide complete relief—is an important consideration under Section 1404(a).").) The District of Kansas litigation was ultimately transferred to Delaware. *Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049 (D. Kan. 2012).
    Cox's justification for this change in position is exceedingly thin and unpersuasive. This doublespeak—talking out of both sides of their mouth—is abhorrent to the interests of justice, which of course is one of the pillars of the transfer analysis. "Federal courts possess inherent equitable authority to sanction malfeasance. One such sanction is judicial estoppel. ... When properly invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001). In the Third Circuit:
> Three requirements must be met before a district court may properly apply judicial estoppel. The party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast

Dated: July 9, 2015

UNITED STATES DISTRICT JUDGE

>and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Id.* at 779–80.

Cox's change in position as to the principal place of business of the regional entities is "irreconcilably inconsistent." *See id.* The court is aware that the Third Circuit has cautioned courts against *sua sponte* findings of bad faith. *See id.* at 780 n.5 ("We have held that a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes, but two precepts are nevertheless clear. First, a court considering the use of judicial estoppel should ensure that the party to be estopped has been given a meaningful opportunity to provide an explanation for its changed position. Second, though a court may sometimes discern bad faith without holding an evidentiary hearing, it may not do so if the ultimate finding of bad faith cannot be reached without first resolving genuine disputes as to the underlying facts." (internal citations and quotation marks omitted)). Notwithstanding this warning, the court is convinced that bad faith is present here and that Cox is playing "fast and loose with the court." *See id.* at 779. In response to AT&T's exhibits showing Cox's prior inconsistent statements, Cox offered no explanation for the change in position. Rather, Cox states that Ms. Allen-Wang's affidavit "stands uncontradicted." (D.I. 102 at 3.) This is blatantly false—AT&T's cited documents cast serious doubt on Ms. Allen-Wang's statements. And the court need not resolve underlying factual disputes. *See Montrose*, 243 F.3d at 780 n.5. The only relevant question for the court is whether Cox has made inconsistent statements to the court concerning the principal place of business for the regional entities. The answer is, "yes." When it suits Cox to litigate in Delaware, it takes one position. Judges in this District and the District of Kansas accepted Cox's averments. *See id.* at 782 ("[I]t does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency."). When Cox would prefer to litigate elsewhere, it takes a different position. This is, in the court's view, bad faith.

Finally, the court must tailor a remedy to adequately address the harm. Here, the court finds that denying Cox's motion is a narrowly tailored remedy.

The court reaches the same result, even if it does not apply judicial estoppel. As stated above, "[t]he burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879. Cox states that "[v]enue can also be found in the Northern District of Georgia even without conducting a personal jurisdiction analysis." (D.I. 102 at 3.) This may be true, but personal jurisdiction still remains a necessary element of the transfer analysis. *See* 15 Wright and Miller, Federal Practice and Procedure § 3841 (4th ed. 2014) ("[*Hoffman*] requires that the transferee court (1) would have been a proper venue and (2) *would have had personal jurisdiction over the defendant had the case been filed there initially.*" (emphasis added)); *see also Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 468 (D. Del. 2013) ("[T]he court may only grant the defendant's motion to transfer . . . if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction over this action."). The only asserted basis for jurisdiction in the Northern District of Georgia is Ms. Allen-Wang's statement that each of the Cox entities has its principal place of business in Atlanta. (D.I. 102 at 3.) Because the court does not find Ms. Allen-Wang's affidavit credible, Cox has not carried its burden to prove that personal jurisdiction would have been proper in the Northern District of Georgia. The court, in its discretion, will deny Cox's motion. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." (internal quotation marks omitted)).